1 | MARK S. ADAMS (Bar No. 125485)
2 | MONICA Q. VU (Bar No. 216352)
  | JEFFER MANGELS BUTLER & MITCHELL LLP
3 | 3 Park Plaza, Suite 1100
  | Irvine, California  92614
4 | Telephone:  (949) 623-7200
  | Facsimile:   (949) 623-7202
5 | Email: markadams@jmbm.com
  | Email: mvu@jmbm.com

6 | Attorneys for Defendants ION GENIUS, INC.
  | (erroneously sued as ION GENIUS, INC. DBA
7 | ARASYS PERFECTOR DBA FOREVER YOUNG
  | DBA ION GENIUS DBA ION MAGNUM)
8 | and DR. XANYA SOFRA-WEISS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROTRIS, INC. a California corporation, ANTHONY PICCIANO dba A-1 ENGINEERING, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ION GENIUS, INC. dba ARASYS PERFECTOR dba FOREVER YOUNG dba ION GENIUS dba ION MAGNUM, a Hawaii corporation, DR. XANYA SOFRA-WEISS, an individual, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO.  SACV12-01010 AN<br><br><br>**DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))**<br><br><br>Date: August 23, 2012<br>Time: 10:00 a.m.<br>Judge: Honorable Arthur Nakazato<br>Dept.: Courtroom 6B |

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
OC 7298385v1

TO PLAINTIFFS NEUROTRIS, INC. and ANTHONY PICCIANO dba A-1 ENGINEERING, and THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 23, 2012 at 10:00 a.m. in the Courtroom of the Honorable Arthur Nakazato of the above referenced court, located at 411 W. Fourth Street., #1053, Santa Ana, California, 92701, Defendants ION GENIUS, INC. erroneously sued as ION GENIUS, INC. dba ARASYS PERFECTOR dba FOREVER YOUNG dba ION GENIUS dba ION MAGNUM and DR. XANYA SOFRA-WEISS will move to transfer this case to the District of Hawaii for the convenience of the parties and witnesses, and in the interest of injustice, pursuant to 28 U.S.C. 1404(a).

This Motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Grant Gibson, Esq. and Dr. Xanya Sofra-Weiss, the files and records in this action, argument of counsel, and upon such other and further matter adduced at the hearing or of which the court takes judicial notice.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on July 11, 2012.

DATED: July 13, 2012

JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Mark S. Adams
MARK S. ADAMS
Attorneys for Defendants ION GENIUS, INC. erroneously sued as ION GENIUS, INC. dba ARASYS PERFECTOR dba FOREVER YOUNG dba ION GENIUS dba ION MAGNUM and DR. XANYA SOFRA-WEISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Neurotris, Inc. ("Neurotris") and Anthony Picciano ("Picciano"; Picciano and Neurotris are collectively referred to herein as "Plaintiffs") initiated the instant action for the sole purpose of harassment and retaliation. Plaintiffs are already litigating the same set of facts and circumstances in a pending action in Hawaii with defendant Ion Genius, Inc ("Ion Genius"). In that action, Plaintiffs lost on a motion to dismiss based on lack of personal jurisdiction and partially prevailed on a summary judgment motion. Despite that they should have and could have easily brought the instant claims in Hawaii, they want to drive up the costs of litigation and harass defendants by filing here. As shown below, Plaintiffs' complaint is specious, contrived, and was filed in retaliation to Ion Genius' complaint.

The principal parties involved in this litigation are alleged competing providers of anti-aging and longevity products. More than a month before the instant action was filed, on April 13, 2012, Ion Genius commenced an action in Hawaii Circuit Court against the Plaintiffs here, as well as another defendant, Kenneth Simon, entitled *Ion Genius, Inc. v. Kenneth J. Simon et al.*, Civil Case No. 12-1-1011-04 KKS (the "Hawaii Action"). The Hawaii Action alleges that Neurotris and Picciano solicited Simon, who was one of Ion Genius' key sales representatives, to work for Neurotris, for the purpose of obtaining Ion Genius' confidential information.

Specifically, Ion Genius alleges in the Hawaii Action that Picciano and/or Neurotris misappropriated the identities and contact information of Ion Genius' customers that they obtained from Simon and then sent e-mails to those customers defaming Ion Genius. Those customers in turn contacted Weiss to inquire about Picciano's and Neurotris' e-mails, to which Weiss responded via e-mails or telephone calls to her customers. Plaintiffs claim that those very reply e-mails and telephone calls that Weiss made to Ion Genius' customers defamed Plaintiffs and

1 interfered with their business. In other words, Plaintiffs have taken the facts alleged
2 by Defendants in the Hawaii Action and turned them around to form the basis of the
3 instant action.

4 Because Plaintiffs' action is a mirror image of Ion Genius' claims
5 against Plaintiffs in the Hawaii Action and arise from the same set of facts and
6 circumstances as Defendants' complaint in the Hawaii Action, the same key
7 witnesses are involved in both actions. These witnesses reside and are located in
8 Hawaii. This action should not proceed here because it would cause duplicative
9 litigation and waste judicial resources as well as time and money. It could also
10 potentially result in inconsistent rulings and findings of fact, given the overlap and
11 similarity of alleged issues in both actions. Because there is already an action
12 pending in Hawaii between the same parties, it would be much more convenient to
13 have this action tried in Hawaii since both Defendants and Plaintiffs will already be
14 litigating there, as opposed to forcing Defendants to litigate in two separate forums at
15 once.

16 The Court should thus transfer this matter to the District of Hawaii
17 pursuant to 28 U.S.C. § 1404(a).

18 **II.  RELEVANT PROCEDURAL HISTORY**

19 On April 13, 2012, Ion Genius initiated the Hawaii Action by filing a
20 complaint in the Circuit Court of the First Circuit in the State of Hawaii. (Declaration
21 of Grant Gibson ["Gibson Decl."], ¶ 2.) That complaint alleges, *inter alia,* (1)
22 tortious interference with contract, (2) theft of intellectual property, (3)
23 misappropriation of trade secrets, (4) unfair and illegal trade practices and, with
24 regard to Picciano individually, (5) defamation. (*Id*.)

25 More than a month after the filing of the complaint in the Hawaii Action,
26 Plaintiffs proceeded to file a similarly based action in California State Court against
27 Ion Genius and Weiss, alleging, *inter alia,* (1) intentional interference with contract
28 and prospective economic advantage, (2) negligent interference with prospective

- 2 -

1  economic relations, (3) defamation, (4) unlawful and unfair competition, and (5)
2  intentional infliction of emotional distress, which are almost the identical claims
3  brought by Ion Genius in Hawaii.
4        On May 17, 2012, Neurotris and Picciano filed in the Hawaii Action a
5  motion to dismiss for lack of personal jurisdiction, or, in the alternative, a motion for
6  summary judgment against all the claims asserted by Ion Genius. (Gibson Decl., ¶ 3)
7  A hearing was held before Judge Sakamoto on June 20, 2012, following which Judge
8  Sakamoto denied the motion to dismiss for lack of personal jurisdiction as to both
9  Picciano and Neurotris, and denied the motion for summary judgment as to the
10 misappropriation of trade secrets and theft of intellectual property claims as to both
11 Neurotris and Picciano. (*Id*.) Thus, Neurotris and Picciano are both subject to the
12 jurisdiction of the courts of Hawaii and remain defendants in the Hawaii Action.

### III.   RELEVANT FACTS

14       A review of the factual allegations that form the basis of the Hawaii
15 Action as well as the instant action shows that Plaintiffs initiated this action for the
16 purpose of harassing and retaliating against Defendants.
17       After Simon left Ion Genius' employment and commenced working with
18 Neurotris, certain of Ion Genius' customers and prospective customers received e-
19 mails from Simon disparaging Ion Genius' business. For example, on December 21,
20 2011, Simon on behalf of Neurotris, sent an e-mail to Susan Rathunde of National
21 Business Dynamics, which falsely claimed that Ion Genius could not sell any
22 products or machines in the US: "Ion Genius has been restricted by the FDA for
23 importation and sale in the US." Rathunde then forwarded the e-mail to Weiss to let
24 her know what was being said about Ion Genius. (Weiss Decl., ¶ 6, Exh. 1)
25       Simon's and Neurotris' defamatory statements continued through April
26 9, 2012, only a few days before the Hawaii Action was filed. In an e-mail dated April
27 9, 2012, Simon misleadingly and deceptively told another Ion Genius customer that
28 "[i]f you don't already know, one of our competitors, Ion Genius, who have similar

- 3 -

1  products, are no longer able to sell their machines in the US or Canada." (Weiss
2  Decl., ¶ 7, Exh. 2)  In response to Simon's and Neurotris' defamatory statements,
3  Weiss contacted the Ion Genius customers who had received the e-mails in an attempt
4  at "damage control."  Weiss' responses were in either the form of e-mails or
5  telephone calls.  (Weiss Decl., ¶ 9)  Weiss then caused the Hawaii Action to be filed.
6  (Weiss Decl., ¶ 10)

7  In the instant action, Plaintiffs claim that Weiss' responses to Ion Genius
8  customers, *i.e.*, the e-mails that she sent and telephone calls she made for "damage
9  control" purposes, constituted defamation and interfered with Neurotris' relationships
10 with its customers or potential customers.  But these customers were in fact Ion
11 Genius' customers, not Neurotris'.  Neurotris had attempted to convert these
12 customers into its customers.  Neurotris' instant complaint simply flipped the
13 allegations of the complaint in the Hawaii Action against Ion Genius and Weiss.

## IV.  ARGUMENT -- THIS CAUSE SHOULD BE TRANSFERRED TO THE DISTRICT OF HAWAII

16  28 U.S.C. § 1404(a) provides: "[f]or the convenience of the parties and
17 witnesses, in the interest of injustice, a district court may transfer any civil action to
18 any other district or division where it might have been brought."  The analysis
19 involved in a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is twofold.
20 The court must first decide whether the action is one that "might have been brought"
21 in the transferee court.  28 U.S.C. § 1404(a).  This means that the action could have
22 been commenced originally in the transferee court because the transferee court would
23 have had subject matter jurisdiction, defendants would have been subject to personal
24 jurisdiction there, and venue would have been proper there.  *Hoffman v. Blaski,* 363
25 U.S. 335, 343-344, 80 S.Ct. 1084, 1090 (1960).

26  In this matter, it cannot be seriously contended—especially in light of
27 the pending Hawaii Action—that this action could not have been brought in the
28 District of Hawaii.  Ion Genius and Weiss are both Hawaiian citizens and residents

- 4 -

1  and are alleged to have defamed Plaintiffs by sending e-mails to third parties which
2  emanated from Hawaii. This not only subjects Defendants to personal jurisdiction in
3  the District of Hawaii, but also makes venue proper there under 28 U.S.C. § 1391(c).
4  Because there is also minimal diversity between the parties (since both Neurotris and
5  Picciano are California citizens), and Plaintiffs' action claims an amount of no less
6  than five million dollars, the District of Hawaii would have subject matter jurisdiction
7  over the action under 28 U.S.C. § 1332(d). Finally, there is already an action pending
8  against Plaintiffs in Hawaii arising from the same set of facts. Thus, Plaintiffs could
9  have easily sued Defendants in the District of Hawaii.

10        Once the Court has determined that proper venue exists in the transferee
11 district, as is the case here, "the Court turns to 'the central inquiry of a § 1404(a)
12 motion' - the convenience of the parties and witnesses and the interests of justice."
13 *Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 2006 U.S. Dist. LEXIS
14 37641, * 6 (C.D.Cal. 2006). These factors are addressed to the inherent discretion of
15 the court. They are interpreted broadly to allow the court to consider the particular
16 facts of each case. *E.&J. Gallo Winery v. F.&P.S.p.A,* 899 F. Supp. 465, 466 (E.D.
17 Cal. 1994).

18        In determining the convenience of the parties and witnesses and the
19 interests of justice, the Court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

25 *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also*,
26 *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).
27 Courts have also considered additional factors such as judicial economy (*Van Dusen*
28 *v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964)) and relative docket

- 5 -

congestion (*Kasey v. Molybdenum Corp. of America*, 408 F.2d 16, 20 (9th Cir. 1969)).

Of these factors, the plaintiff's choice of forum is traditionally afforded substantial weight. But a plaintiff's choice of forum is not, by itself, the final word. *Pac. Car and Foundry v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968). Indeed, a plaintiff's chosen forum will be accorded little deference where it is apparent that plaintiff is engaged in forum shopping and is offered an equally convenient forum elsewhere. *Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 54 (D. DC 2000). Indeed, the "Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping." *Garcia*, 2009 U.S.Dist.LEXIS 112247, *7, *citing*, *Alltrade, Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

This is the precise situation here. Plaintiffs are already defending a lawsuit in Hawaii involving the same parties. There is an overlap of relevant witnesses located in Hawaii in both this action and the Hawaii Action. The court in the Hawaii Action has found that Plaintiffs are required to defend the action there by denying Plaintiffs' motion to dismiss. Plaintiffs are obviously unhappy with being forced to litigate in Hawaii and have filed a suit here to either harass Defendants or gain some type of advantage they would not have had if they filed their suit in Hawaii. But given that Plaintiffs are already required to litigate in Hawaii, it is just as much of a convenient forum for them as California. Thus, Plaintiff's choice of forum under the present facts should not be given the customary weight.

Consideration of the other remaining factors reveal that they are either neutral or favor transfer to the District of Hawaii.

### A. Plaintiffs' Contacts with Hawaii Favors Transfer

In denying Plaintiffs' motion to dismiss for lack of personal jurisdiction in the Hawaii Action, Judge Sakamoto found that Plaintiffs have sufficient minimum contacts to be sued in Hawaii and defend themselves there. Specifically, Plaintiffs

- 6 -

1 transact business in Hawaii through their employee Simon, who is located in Hawaii, 2 and sell products to customers in Hawaii. (Weiss Decl., ¶¶ 3,4,8) In addition, 3 Plaintiffs' alleged wrongful acts against Defendants arise from conduct that occurred 4 in Hawaii through Weiss. As a result, this factor weighs in favor of transfer.

5       **B.**     <u>**Convenience of the Parties/Costs of Litigation Favor Transfer**</u>

6       Convenience of the parties is an important factor to consider for transfer 7 of venue. *Jarvis v. Marietta Corp.,* No. 98-4951, 1999 U.S. Dist. LEXIS 12659, at 8 *10 (N.D.Cal. Aug. 12, 1999). This includes balancing the relative costs of litigating 9 in the two forums. *Jones v. GNC Franchising,* 211 F.3d 495, 498-499 (9th Cir. 10 2000). Here, it is much more convenient and less expensive for the parties to litigate 11 in Hawaii, where another action between them is already pending.

12       As stated above, Plaintiffs do business in Hawaii and Judge Sakamoto 13 determined that based on such contacts, it would be fair and reasonable to have 14 Plaintiffs defend an action there. In contrast, it would be extremely inconvenient and 15 expensive to force Defendants to litigate here. Weiss is a resident and citizen of 16 Hawaii. Ion Genius is a small, local Hawaii company with its principal place of 17 business in Honolulu. The company has four employees total, excluding Weiss, and 18 there are no employees in California. Ion Genius has no operations in California, has 19 no agents in California, no personal or real property in California or any bank account 20 there. It has never paid any taxes in California, nor does it have an agent for service 21 of process in California. (Weiss Decl., ¶ 2) The estimated fees of Defendants' 22 Hawaii counsel as compared to California counsel is much lower based on estimates 23 received and the customary rates charged by attorneys in Hawaii versus Southern 24 California. (Gibson Decl., ¶ 4)

25       In addition, the parties are already involved in litigation in Hawaii and 26 thus, Plaintiffs will already have to incur the incidental costs of litigating in Hawaii. 27 Plaintiffs engaged an attorney in Hawaii to represent them in the Hawaii Action, who 28 filed a motion to dismiss and motion for summary adjudication on their behalf.

1  Because Plaintiff's motion to dismiss was denied and causes of action for
2  misappropriation of trade secrets and theft of intellectual property against both
3  Plaintiffs remain, there is no doubt Plaintiffs will continue litigating in Hawaii.  As a
4  result, it would also be less expensive for Plaintiffs to litigate the instant action in
5  Hawaii as opposed to two separate forums with two sets of lawyers.

### C. Convenience of the Witnesses Favor Transfer

7  A review of Plaintiffs' complaint shows that the key witnesses for their
8  case are Weiss and Simon, both of whom reside and are located in Hawaii, and both
9  of whom are also key witnesses in the Hawaii Action.  (Gibson Decl., ¶ 5)  Plaintiffs'
10 complaint alleges that "Defendants obtained information concerning its customers
11 from Defendants' employee, Kenneth Simon."  (Compl., ¶ 15)  Thus, Simon would
12 have relevant knowledge of the nature and scope of information belonging to
13 Neurotris that was allegedly disclosed to Defendants.

14 As explained above, Simon is Ion Genius' former employee who
15 currently works for Neurotris from his residence in Hawaii; he holds himself out as
16 Neurotris' sales manager.  (Weiss Decl., ¶¶ 3,4,8)  Plaintiffs' complaint alleges that
17 contracts and prospective economic relationships exist between Neurotris and its
18 various customers, which Defendants interfered with.  (Compl., ¶¶ 30 and 36)  As
19 Neurotris' sales manager, Simon has relevant knowledge about such customer
20 relationships, including the customers' identities and whether in fact their
21 relationships were interfered with.  Finally, Simon also owns a business called
22 Essence of Change located in Honolulu, Hawaii, which business is a customer of
23 Neurotris.  (Weiss Decl., ¶ 11)  Given that Simon is also a customer, he would also
24 have relevant information on Neurotris' customer relationships.

25 Similarly, Plaintiffs' complaint names Weiss as the person who sent the
26 alleged defamatory e-mail and made the call to Neurotris' customers.  (Compl., ¶¶ 20
27 and 27)  Weiss would thus have crucial information regarding what was allegedly
28 said to these customers and why.  Weiss will provide essential information to defend

- 8 -

1 against Plaintiffs' claims.

2 In addition, there are other relevant witnesses located in Hawaii. Mario
3 Cruz, who resides in Honolulu, Hawaii, was the person who sent an e-mail to the Ion
4 Genius customers who informed Ion Genius that they received Plaintiffs' defamatory
5 e-mails. He also had direct contact with Picciano regarding the alleged defamatory
6 statements made. Tanya Conger, also located in Honolulu, Hawaii, is familiar with
7 the customers of Ion Genius and also has knowledge of the e-mails that were sent by
8 Picciano to Ion Genius customers and Defendants' responses to same. She also was
9 present on telephone calls involving Picciano about the alleged defamatory e-mails.
10 Moreover, she has relevant information about Simon's conduct vis a vis the two
11 companies. (Gibson Decl., ¶ 5)

12 **D.** **Judicial Economy Favors Transfer**

13 Courts have also transferred a matter where it would avoid duplicative
14 litigation, effect judicial economy and prevent waste of time and money. *Van Dusen*
15 *v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964); *Reese v. CNH America LLC*,
16 574 F.3d 315, 320 (6th Cir. 2009); *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303
17 F.Supp.2d 391, 406 (S.D.N.Y. 2004). Such goals would be achieved here by a
18 transfer. The parties are already litigating in Hawaii over the same set of facts and
19 circumstances. It only makes sense to transfer the case to Hawaii District Court
20 where it can be consolidated or coordinated with the pending Hawaii action.
21 Duplicative depositions and discovery can be avoided once the cases are both in
22 Hawaii.

23 **E.** **The District of Hawaii's Court Docket Favors Transfer**

24 Another consideration in a transfer motion is the relative trial calendar
25 and case dockets in the two forums. *Kasey v. Molydenum Corp. of America,* 408 F.2d
26 16, 20 (9th Cir. 1969); *Nike, Inc. v. Lombardi,* 732 F.Supp.2d 1146, 1159 (D. OR
27 2010). For example, courts will examine the median number of months from filing to
28 disposition and/or the median number of months from filing to trial. *Schwarz v.*

JMBM Jeffer Mangels Butler & Mitchell LLP

PRINTED ON RECYCLED PAPER

OC 7298385v1

MOTION TO TRANSFER VENUE
CASE NO. SACV12-01010 AN

1 *National Van Lines, Inc.*, 317, F.Supp.2d 829, 837 (N.D. IL 2004).

2 Here, the District of Hawaii's docket, when compared to this Court's, favors transfer. The federal courts in California, including this Court, are significantly more backlogged than the federal court in Hawaii. In fact, the percentage of civil cases still pending before the District Court for the Central District of California is approximately three (3) times as long as that in Hawaii. (Gibson Decl., ¶ 6, Exh. 3) Since 2006, the number of filings in this Court has increased by approximately 40% while the number of judgeships has remained the same at 28. (*Id.*). The "Median Time" in months "from filing to trial (Civil Only)" in this Court is 19.7 months while in Hawaii it is 9.3 months. (*Id.*)

### F. Defendants Will Agree to Coordination

Defendants will stipulate to a coordination of the Hawaii Action with the instant action after it is transferred, for purposes of discovery and trial. (Gibson Decl., ¶ 7)

## V. CONCLUSION

For each and every reason set forth above, Ion Genius and Weiss respectfully request that the Court grant their motion to transfer the case to the District of Hawaii.

DATED: July 13, 2012          JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Mark S. Adams
    MARK S. ADAMS
Attorneys for Defendants ION GENIUS, INC. erroneously sued as ION GENIUS, INC. dba ARASYS PERFECTOR dba FOREVER YOUNG dba ION GENIUS dba ION MAGNUM and DR. XANYA SOFRA-WEISS

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3 Park Plaza, Suite 1100, Irvine, California 92614.

On July 13, 2012 I served the document(s) described as **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE (28 U.S.C. § 1404(a))** with the Clerk of the United States District Court for the Central District of California, using the CM/ECF System, The Court's CM/ECF System will send an email notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System:

Omar A. Siddiqui  *Attorneys for Plaintiff NEUROTRIS, INC.*
Daniel M. Josephson  *and ANTHONY PICCIANO dba A-1*
Ulwelling Siddiqui LLP  *ENGINEERING*
Park Tower, Suite 700
695 Town Center Drive
Costa Mesa, CA 92626

Telephone: (714) 384-6650
Facsimile: (714) 384-6651

☒ (BY ELECTRONIC SERVICE VIA CM/ECF SYSTEM) In accordance with the electronic filing procedures of this Court, service has been effected on the aforesaid party(s) above, whose counsel of record is a registered participant of CM/ECF, via electronic service through the CM/ECF system.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 13, 2012 at Irvine, California.

/s/ Mark S. Adams
Mark S. Adams

PRINTED ON
RECYCLED PAPER
OC 7298385v1

PROOF OF SERVICE